UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

martFIVE, LLC, a Minnesota
limited liability company,

         Plaintiff,

vs.

TELEBRANDS CORP., a New
Jersey corporation,
and DOES 1 through 11,

         Defendants.

CASE NO. _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiff, martFIVE, LLC, (hereinafter "Plaintiff" or "martFIVE") alleges as follows for its complaint for damages and injunctive relief against Telebrands Corp. and Does 1-11 (hereinafter "Telebrands", "Doe-Defendants" respectively, or "Defendants" collectively).

### SUMMARY NATURE OF THE ACTION

      1.    martFIVE is forced to initiate this action to combat the willful and intentional infringement of its copyrights, trademarks and trade dress, including Defendant Telebrands' blatant use of deceptive trade practices in its promotion and sale of two so-called "knock-off" products, which mimic Plaintiff's products; a cane called the HURRYCANE® and a line of plush children's toys called Stuffies®.

      2.    Defendants developed, and currently market and sell their deceptively

similar, copied products across the United States through intentionally and substantially similar advertising content and videos, broadcast on television commercials and various websites developed and operated by Defendants, including www.trustycane.com, www.pocketpals.com and www.buypocketpets.com.

3.    Telebrands' contemptible strategy to usurp others' intellectual property rights and asset values has been prevalent for years.  It waits for an entrepreneur to develop a new product, invest millions of dollars in R&D, product refinements and related media spending, to generate initial consumer awareness and create product demand.  Once the original product establishes market success, Telebrands develops a low-quality, cheaply-priced knock-off product which is identical in design and attributes. It then intentionally mimics the creative marketing campaign with the original product's "look & feel", thereby converting the original product's identity, advertising campaign, brand, goodwill, consumer awareness and ultimately the same market share.  This creates consumer confusion, resulting in consumers purchasing Telebrands' low quality products, leaving consumers frustrated and causing irreparable damage to the original, successful product's brand and company.

4.    Defendant Telebrands is no stranger to infringement, unfair competition and deceptive trade lawsuits.  Indeed, Plaintiff is aware of over thirty (30) distinct federal lawsuits since 1990 alleging intellectual property infringement and related claims against Telebrands and/or its principal, Ajit "A.J." Khubani, as defendants.  *(See* ECF Case Spreadsheet, attached hereto as **Exhibit A**).  As a result, A.J. Khubani, is infamously known as the "Knock Off King" within the infomercial advertising industry.

5.      In fact, as recently as last year, Telebrands defended a lawsuit in this very district which also alleged infringement of copyrights, trademarks, trade dress and other unfair competition, false designation and deceptive trade practice claims, in *My Pillow, Inc. v. Telebrands, Inc., et al,* Case # 12-cv-00389-JRT-JJK.

6.      Even the U.S. Federal Trade Commission has compelled Telebrands to agree to pay seven million dollars ($7,000,000) and enter into a Stipulated Judgment for its deceptive advertising, related to another of Telebrands' products, in December 2008. *See*  http://www.ftc.gov/opa/2009/01/telebrands.shtm.

7.      This lawsuit is unfortunately, but perhaps not surprisingly, remarkably similar to the scores of lawsuits which have been filed against Telebrands repeatedly, by many legitimate businesses, year after year.

8.      Simply put, Telebrands has copied Plaintiff martFIVE's video advertising, websites, and products, including the entire "look and feel" and material elements of Plaintiff's very expensively-developed and refined, protected intellectual property and content.  Telebrands' intentionally produces, broadcasts and posts its infringing content and advertising in the same manner as martFIVE -- on television  and the internet -- trading off Plaintiff's intellectual property rights and goodwill, to promote and sell considerably inferior products called the "Trusty Cane", "Pocket Pets" and/or "Pocket Pals" at a fraction of the price of martFIVE's similar products.

9.      Telebrands' blatant rip-off of martFIVE's  video advertising, website content and product lines has caused, and will continue to cause, substantial consumer confusion and deception in the marketplace, resulting in calls and confusion regarding the

copied advertising campaigns and knock-off products.

10.     This ongoing consumer confusion is causing substantial, ongoing and escalating economic and reputational injury to martFIVE.  Unless stopped immediately, it will destroy martFIVE's intellectual property rights, its goodwill and thereby threaten martFIVE's survival; a good corporate citizen and employer of nearly 150 people directly and indirectly in and around the Twin Cities metropolitan area.

11.     Telebrands is marketing, promoting, advertising, offering for sale and selling its infringing products through deliberately similar and infringing content in its advertisements, which has been and continues to be duplicated and distributed through television video broadcasts and internet websites, which are derivative of, substantially similar to, trading off and infringing, martFIVE's advertising content, which martFIVE also distributes thorough its own television broadcasts and internet website advertisements.

12.     Telebrands' use of substantially similar content in its advertisements and choices of media distribution channels, promoting and selling its far inferior knock-off products in commerce infringes martFIVE's registered copyrights and trademarks. In addition, Telebrands' conduct constitutes trade dress infringement, unfair competition and false advertising under the federal Lanham Act 15 U.S.C. § 1125(a), and violates Minnesota's Unlawful Trade Practices statutes and Deceptive Trade Practices Act, Minn. Stat. §§ 325D.09-16 and 325D.43-48, respectively.

13.     Plaintiff martFIVE seeks a temporary restraining order, preliminary injunction, permanent injunction, statutory or actual damages, an award of costs and

attorneys' fees, and other relief, as provided by the various, applicable federal and state statutes, against all Defendants who are participating with and thereby assisting Telebrands in its ongoing, illegitimate business practices.

## PARTIES

14.    Plaintiff martFIVE is a Minnesota limited liability company in good standing, with its principal offices located  in  Hennepin County,  Minnesota.  It does business in the State  of Minnesota.

15.    Defendant Telebrands is a New Jersey corporation with its principal offices located at 79 Two Bridges Road, Fairfield, New Jersey 07004.  Telebrands engages in substantial catalogue, retail, online and television sales via infomercials and websites across the nation and in the State of Minnesota.

16.    Plaintiff is currently ignorant of the true names and identities of the additional Defendants sued herein by the fictitious designation Does 1 through 11, inclusive, and therefore sues these Defendants by said fictitious designations ("Doe-Defendants").  Plaintiff will seek leave of Court to amend this Complaint to insert their true names and capacities upon discovery.

17.    Based upon further information and belief, Plaintiff alleges that each of the fictitiously-named Doe-Defendants herein is responsible in some manner and to some degree, whether contributorily, vicariously, intentionally or otherwise for the injuries, acts and damages hereinafter alleged, and at all times material herein, each of the fictitiously-named Doe-Defendants was the partner, joint venturer, co-conspirator, proprietor, proponent, principal, agent or employee of one or more, or each, of the

remaining Defendants,  and was also acting within the course, scope and purpose of said partnership, joint venture, conspiracy, service, proprietorship, agency or employment.

18.     All Defendants are jointly and severally liable for the actions of each of the other Defendants.

## JURISDICTION AND VENUE

19.     This Court has federal subject matter jurisdiction under the copyright laws of the United States, 17 U.S.C. §§ 101, et seq. and the Lanham Act 15 U.S.C. §§ 1051 et. seq.  Jurisdiction is conferred under 17 U.S.C. § 501, 28 U.S.C. §§ 1331, 1338(a) and 1338(b) and 15 U.S.C. § 1121.

20.     This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because this civil action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

21.     This action is also based upon state laws protecting against trademark and trade dress infringement, unfair competition and deceptive trade practices.  This Court has jurisdiction over the state claims pursuant to 28 U.S.C. § 1338(b).  This Court also has jurisdiction over the state claims under 28 U.S.C. § 1367(a) and the doctrine of pendent jurisdiction.

22.     This Court has personal jurisdiction over Defendants, since each is engaged in substantial business and/or has committed statutory violations and/or tortious acts within this judicial district. Specifically, upon information and belief, the Defendants operate and maintain business operations which identify, develop, import, produce, advertise, market, promote, offer for sale and sell infringing products through use of

deceptive, unfair and infringing content on television and the Internet to residents of Minnesota in a manner that infringes on Plaintiff's copyrights, trademarks and trade dress and also constitutes unfair competition and false advertising.   Consumers within this judicial district have, in fact, been confused by the substantial similarities of Defendant's advertising for its cane product to those of martFIVE, and reported same in this district.

23.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(c) because Defendants are subject to personal jurisdiction in this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred, and the irreparable harm being suffered is in, this judicial district.

## FACTS COMMON TO ALL COUNTS

### Plaintiff's Business

24.     martFIVE is a Minnesota-based company, designed to prove both ethical business leadership and cause-based marketing can and should co-exist within mass consumer marketing enterprises.   Its reputation is stellar with charities, consumers and industry partners of all types.   As a result, martFIVE's vision to "change people's lives" is well on its way to reality, positively impacting the lives of thousands in Minnesota and nationwide.

25.     The HURRYCANE® was created to support the critical importance of using an assistive device when mobility loss occurs for individuals.   Embarrassment is a primary reason of non-compliance to walking cane use, often resulting in falls and serious injury.   The HurryCane was designed to inspire use, in a category where the cane options with greater stability have been deemed "ugly" and embarrassing.

26.     Substantial support for veterans motivated martFIVE's decision to manufacture the HURRYCANE®  in the United States.  Over $750,000 in research and development has already been invested by Plaintiff to make that happen.  The goal is to fully inspire users with a made-in-America product, which supports significant manufacturing work for U.S. workers.  And it's the only cane endorsed by the Arthritis Foundation of America.

27.     Stuffies® are a line of children's plush toys, carefully crafted to stimulate independent play, while forming values-based bonds with children.  Stuffies'® tagline of "It's What's Inside That Counts", and their personalized story books for each character, have become popular with parents, grandparents, and children alike.  Though in demand by mass retailers, the brand is carried by local retailers where the economic impact is greater.

28.     The Stuffies® line has won multiple parenting awards, while supporting dozens of children's causes, including major support for the Toy Bank, cancer causes, and foster homes.  They are a clear force for good in the toy industry.

<b>Plaintiff's Protected Intellectual Properties</b>

<b><u>HURRYCANE®</u></b>

*Copyrights:*

29.      Plaintiff martFIVE determined the best way to market its HURRYCANE® product was by making direct sales to consumers through internet and television promotion, or what is commonly referred to as "As Seen On TV" advertising.  Accordingly, Plaintiff produced video content for a commercial to be broadcast on

television and internet websites, including, but not limited to, one-minute videos of its products in a "call to action" format.  The HURRYCANE® commercials are entitled "The Cane That Stands Alone", "More Than A Stick" and "Fastest Selling".

30.     Prior to filing this Complaint, Plaintiff applied for United States copyright registrations for its HURRYCANE® video commercials entitled "The Cane That Stands Alone", "More Than A Stick" and "Fastest Selling" on May 17, 2013.  The applications for these video commercials are pending.  Plaintiff will seek to amend this Complaint to include the official copyright registration information for these commercials, upon issue from the U.S. Copyright Office.

31.     martFIVE began airing the HURRYCANE® commercials on television, virtually throughout the United States, on or about June 7, 2011, and began using the commercials on the home page of its website around the same timeframe.

32.     martFIVE also independently created its original website copy and content, to express its unique ideas surrounding its HURRYCANE® product.   Its HURRYCANE® website content was registered with the U.S. Copyright Office on 05/17/2013.

***Trademarks:***

33.     martFIVE's HURRYCANE product enjoys federal trademark protection, after  applying for and receiving three (3) distinct United  States  Patent and Trademark Office registrations.

34.     It   holds   registered   rights   for   the   standard   character   mark "HURRYCANE"® which was issued on November 13, 2012 as United States Trademark

Registration # 4,243,464.

35.     martFIVE also holds registered rights for the mark "TheHurryCane.com"® which was issued on February 5, 2013 as United States Trademark Registration # 4,286,043.

36.     And finally, Plaintiff holds registered rights for the mark "HURRYCANE The all-terrain cane." ®, including its stylized design, which includes an image of the cane, issued on August 14, 2012 as United States Trademark Registration # 4,191,792.

37.     Plaintiff holds these registrations as well all rights to the indicated marks. Attached hereto as **Exhibits B, C & D** are copies of martFIVE's Certificates of Trademark Registration, related to its HURRYCANE® product line.

<u>**Stuffies®**</u>

*Copyrights:*

38.     Plaintiff martFIVE also markets and sells its Stuffies® plush toy product line by broadcasting advertising videos on television and through various internet websites, making direct sales to consumers through both methods.  Plaintiff has produced its Stuffies® video commercials as  one-minute videos, demonstrating the fun and interesting designs of its Stuffies® products, also in a "call to action" format, entitled "How Much Stuff" and "What's In Your Stuffie".

39.     Plaintiff applied for United States copyright registrations for its Stuffies® "How Much Stuff" and "What's In Your Stuffie" video commercials on May 17, 2013. These applications are also pending.  Plaintiff will seek to amend this Complaint to include the official copyright registration information for the commercials, upon issue

from the U.S. Copyright Office.

40.     martFIVE began airing its Stuffies® commercials on television, virtually throughout the United States, on or about November 1, 2011 and began using the commercials on the home page of its website as of the same date.

41.     martFIVE also applied for copyright registrations on the designs of its plush toy Stuffies® line of products on May 17, 2013.  Those applications are pending. Plaintiff will amend this Complaint to include copyright registration information for the Stuffies® designs, and any other copyright registrations it receives, once they are issued by the U.S. Copyright Office.

42.     martFIVE also independently created its original Stuffies® website copy and content, to express its unique ideas surrounding its Stuffies®  product line.  Its Stuffies® website content was registered with the U.S. Copyright Office on 05/17/2013.

43.     martFIVE owns the copyrights for all of its videos, website content and plush toy design works it produced itself or under work-for-hire contracts, whether registered or unregistered with the U.S. Copyright Office, and whether these works have been created or will be further developed or derived  by martFIVE or its affiliates in the future ("Copyrighted Works"), including without limitation all copyrights indicated above, and has the exclusive right to reproduce, prepare derivative works, distribute, publicly perform and publicly display them in the United States and abroad.

*Trademarks:*

44.     martFIVE's Stuffies® product line also enjoys federal trademark protection, with two (2) distinct United States   Patent and Trademark   Office

11

registrations.

45.    It holds registered rights for the standard character mark "Stuffies"® which was issued on February 5, 2012  as United States Trademark Registration # 4,286,271.

46.     martFIVE also holds registered rights for the mark "It's what's inside that counts!"® which was issued on February 5, 2012   as United States Trademark Registration #4,286,272.

47.    Plaintiff holds these registrations as well all rights to the indicated marks. Attached as **Exhibits   E & F** are copies of martFIVE's Certificates of Trademark Registration, related to its Stuffies® product line.

## Telebrands' Illegal Acts

48.    Telebrands' infringement and deceptive business practices are clear when one considers the nearly infinite number of design combinations and functions available for production choices within both the toy and walking cane spaces.

49.    To illustrate, Telebrands intentionally copied Stuffies'® 7-pockets design, situating each pocket of their knock-off plush toys in the same place as Stuffies®, when Telebrands could have considered and designed any number of other combinations. martFIVE  evaluated hundreds of animal designs, but Telebrands carefully copied martFIVE's exact animals.

50.    Similarly, Telebrands also could have chosen to innovate in the walking cane space, but instead deliberately chose the exact mix and features and design elements found in the HURRYCANE®.

51.    Perhaps most tellingly, with Telebrands' 20-plus years of advertising

experience, to develop advertising spots that obviously copy martFIVE's talent casting, content and execution is not the result of coincidence, it is the result of Telebrands' deceitful understanding of the millions of dollars in goodwill established through a multi-year, multi-million dollar testing program, now copied and destroyed by their deliberate acts.

### Copyright Infringement of the Stuffies® product designs

52.     martFIVE's copyrighted designs in its Stuffies® line of products have been infringed by Telebrands and the Doe-Defendants, through the unauthorized acts of creating, reproducing, manufacturing, importing, distributing and making derivative works of martFIVE's copyrighted works.  The images below demonstrate the similarities of Plaintiff's Stuffies® line, to the later-created, infringing works of Telebrands' Pocket Pals and Pocket Pets line of products:



***Copyright Infringement of the Stuffies® Advertisements and Marketing Copy***

53.     Similarly, martFIVE's copyrighted content in its advertising videos for its Stuffies® line of products have been infringed by Telebrands and the Doe-Defendants, through their unauthorized acts of creating, reproducing, manufacturing, importing, distributing and making derivative works of martFIVE's copyrighted works.  The images below demonstrate the similarities of Plaintiff's Stuffies® advertising videos, to the later-created, infringing works of Telebrands' advertising videos for their Pocket Pals and Pocket Pets:

## Stuffies®                    Pocket Pals

 

Kids demonstrating zipper pockets.

 

Fast-motion footage of child filling animal.

Stuffies®                          Pocket Pals

        

Child sleeping in car using animal as pillow.

        

Child demonstrating underarm pocket.

Stuffies®                          Pocket Pals

        

Free mystery item being revealed from animal.

        

Cute children interviews.



***Copyright Infringement In the HURRYCANE® Advertisements***

54.     Similarly, martFIVE's copyrighted content in its advertising videos for its HURRYCANE® products have been infringed by Telebrands and the Doe-Defendants, through their unauthorized acts of creating, reproducing, manufacturing, importing, distributing and making derivative works of martFIVE's copyrighted works.  The images below demonstrate the similarities of Plaintiff's HURRYCANE® advertising videos, to the later-created, infringing works of Telebrands' advertising videos for their Trusty Cane:



HurryCane®

Trusty Cane

Well-dressed man in front of seamless white background shows how other canes fall over, but this cane stands upright.

## HurryCane®

## Trusty Cane





"Pivoting" head rotates from angle to standing.





Gentleman walking down steps of home.

HurryCane®          Trusty Cane



Unique silver head placed on multiple surfaces.



Woman letting cane stand freely while reaching for product in store.

HurryCane®          Trusty Cane



3 Foot Pivoting Base

Silver Base with Black Shaft

Collapsible / Purse-Size

*Substantial Similarities of Trademark/Trade Dress in the Advertisements*

55.     On or about April 8, 2013 well after martFIVE's commercials began to air on television and on its websites, and with actual knowledge of martFIVE, its products, trademarks, design patent as well as its copyright-protected product design, television and internet advertising, Telebrands caused advertisements to be produced and began to publically broadcast and make available one or more advertising spots with the intentionally-same look and feel, for both of its virtually identical, knock-off, yet inferior, products called the "Trusty Cane and "Pocket Pets" and/or "Pocket Pals".

56.     Telebrands offers its Trusty Cane product for sale at $19.99 for the first cane, plus 7.99 S&H, then $12.99 for 2nd cane; dramatically below martFIVE's advertised price of $39.95 for a single cane.

57.     Telebrands offers its Pocket Pets/Pocket Pals products for sale at $19.99 each, which is also dramatically below martFIVE's advertised price of $29.95 for each Stuffies® toy.

58.     Telebrands' knock off television advertisements are also available on its websites www.TrustyCane.com, www.PocketPals.com and www.BuypocketPets.com.  Each of these websites also host videos and contain advertising copy which were derived from, share substantial similarities with, and infringe  martFIVE's copyrighted advertisements.

59.     A sample of the most glaring features of Telebrands' knock off advertisements related to martFIVE's HURRYCANE® vs. Telebrands' The Trusty Cane are compared below:

| HURRYCANE | TRUSTY CANE |
|---|---|
| Shows the subject cane being folded up and snapped back out multiple times | Focuses on the tri-fold design and shows the subject cane being folded up and snapped back out multiple times |
| Displays the pivoting base with two blue arrows going around it to demonstrate 360 degree rotation | Displays the pivoting head with two green arrows going around it to demonstrate 360 degree rotation |
| Shows a man in a dark suit dropping other canes and the subject cane left standing alone | Shows a man in a dark suit dropping another cane and the subject cane left standing alone |
| Shows an elderly lady shopping at a grocery store and leaving the subject cane standing up while getting an item | Shows an elderly lady shopping at a bakery and leaving the subject cane standing up while getting an item |
| Shows different surfaces the subject cane will work on (sand, gravel, snow) | Shows different surfaces the subject cane will work on (sand, gravel, snow & grass) |
| The website address is advertised as HurryCane.com with a capital "H" and "C" and scrolling advertisements on the main page | The website address is advertised as TrustyCane.com with a capital "T" and "C" and scrolling advertisements on the main page |

60.    A   sample   of   the   most   glaring   features   of   Telebrands'   knock   off advertisements related to martFIVE's Stuffies® vs. Telebrands' Pocket Pals/Pets are compared below:

| STUFFIES® | POCKET PALS/PETS |
|---|---|
| Shows various small children putting items into the stomach, legs and mouth of the toy, with a girl stating that "My Stuffie keeps my candy from my brother" | Shows various small children putting items into the stomach, legs and mouth of the toy, with a girl stating that "It keeps my secret stuff safe" |
| Showing multiple kids putting a lot of items inside of the toy and asks "How much stuff can you stuff in a Stuffie till your Stuffies stuffed enough stuff" | Showing multiple kids putting a lot of items inside of the toy and asks "Who can fit most inside stuff inside them?" |
| Free story book and mystery gift inside | Comes with surprise toy inside |
| Main webpage shows a child hugging a turtle version of the toy at the bottom | Main webpage page shows a child hugging a turtle version of the subject toy |
| Main webpage shows all of the different animal versions of the toy with a dog version as first toy | Main webpage shows all of the different animal versions of the toy with a dog version as first toy |

| 7 pockets in each toy, located in the mouth, tongue, body and on each leg | 7 pockets in each toy, located in the mouth, tongue, body and on each leg |
|---|---|

61.   On information and belief, Telebrands had access to and had actual knowledge of martFIVE, martFIVE's products and designs, martFIVE's trademarks, and martFIVE's video commercials, aired on both television and websites.  In a flagrant and oft-repeated series of decisions and acts, Telebrands and the Doe-Defendants decided to copy martFIVE's protected properties for financial gain by trading upon, copying, marketing, manufacturing and distributing substantially similar advertising and products, in Telebrands' intentional attempt to knock them off.

62.   Based upon information and belief, Telebrands' ads for its products have aired, been distributed and disseminated in the same markets for martFIVE's products.

63.   Through their advertising campaigns, Telebrands and its agents, representatives, and authorized affiliates have directed customers to websites developed and controlled by Telebrands, located at www.TrustyCane.com, www.PocketPets.com and www.BuypocketPets.com.  Those websites, in turn, display Telebrands' knock off advertisements and offer the infringing or substantially similar products for sale, through the intentional use of substantially similar advertisements in their presentation, content, look and feel.

64.   martFIVE's offices have received inquiries and calls from concerned persons and consumers, who had confused Telebrands' products and advertising with those of martFIVE.

65.   This consumer confusion and deception creates and unfair and misleading

impression that Telebrands' inferior knock off products of are the same as martFIVE's product, or comes from martFIVE or a source affiliated with it.  This deliberate falsehood was created by Telebrands and the Doe-Defendants to brazenly and intentionally take unfair advantage of the popularity and goodwill of martFIVE's HURRYCANE® and Stuffies® brands, products and marketing campaigns.

66.     Based upon information and belief, martFIVE has lost and will continue to lose  substantial sales, revenues and consumer confidence in its quality products. Telebrands has enjoyed, and unless enjoined, will continue to enjoy, substantial wrongful gains and other benefits, as a result of Telebrands' illegal conduct.  Such illegal conduct includes, but is not limited to, Telebrands' advertising, marketing, promotion, offering for sale, and sale of an inferior but same type of product through confusingly similar advertisements being delivered through the exact same media and sales outlets: television, Internet, retail and catalogue sales.

### Telebrands' Modus Operandi:  the "Knock Off King"

67.     Telebrands' principal A.J. Khubani has gained notoriety as the reputed "Knock Off King" of the infomercial advertising industry.  Telebrands has a long and sordid history of intellectual property infringement and is well-known as a hardened, serial, repeat infringer.

68.     For the last twenty years, its modus operandi has been to identify a new product invented by another which is being sold on TV or at retail, fabricate a knock-off version of that product, infiltrate the market with its knock-off product and advertise it with a look-alike broadcast video commercial, and substantially-similar website content,

then make the products available at retail locations and through the Internet and catalogues, merely to create consumer confusion and usurp sales and revenues from the original, authentic product(s).

69.    As public records reveal, Telebrands has been sued numerous times for this repeated "business model".[1]    martFIVE is simply Telebrand's latest victim—one in a long string of such victims.

70.    In fact, even the U.S. Government has had concerns about Telebrands' business and marketing practice.  In December 2008, Telebrands agreed to pay $7 million and enter into a Stipulated Judgment with the Federal Trade Commission for deceptive advertising with respect to one of its knock off products.  The settlement came after the Fourth Circuit Court of Appeals, in Telebrands Corp. v. FTC, 457 F.3d 354 (2006), affirmed an Administrative Law Judge's imposition of the following injunction on Telebrands:

[Telebrands] . . . in connection with the manufacturing, labeling, advertising,

_____

[1] *My Pillow, Inc. v. Telebrands, Inc., et al*, 12-cv-00389-JRT-JJK (D.Minn. 2012); *Edmark Industries v. Telebrands Corp., et al.,* 96-cv-04067 (C.D. Cal. 1996); *Welcome Co. Ltd. v. Telebrands Corp, et al.,* 2:97-cv-09379 (C.D. Cal. 1997); *Bragel International Inc. v. Telebrands Corp.,* 05-cv-01141 (C.D. Cal. 2005); *Peticure LLC v. Telebrands Corp.,* 08-cv-00345 (E.D. Tex. 2008); *Meyer Manufacturing Co. v. Telebrands Corp.,* 11-cv-03153 (E.D. Cal. 2011); *Ymax Corp. v. Telebrands Corp.,* 08-cv-03307 (D. NJ 2008);  *Galant v. Telebrands Corp.,* 35 F. Supp. 2d 378, 393-94 (D. N.J. 1998);  *Carson Optical, Inc. v. Telebrands Corp. et al,* 07-cv-08020 (D. N.J. 2007);  *Milestone Scientific Inc. et al v. Telebrands Corp.,* 05-cv-03706 (S.D. NY 2005).

promotion, offering for sale, sale, or distribution of Ab Force, any other EMS device, or any food, drug, dietary supplement, device, or any other product, service or program, shall not make any representation, in any manner, expressly or by implication, about weight, inch, or fat loss, muscle definition, exercise benefits, or the health benefits, safety, performance, or efficacy of any product, service, or program, unless, at the time the representation is made, [Telebrands] possess[es] and rel[ies] upon competent and reliable evidence, which when appropriate must be competent and reliable scientific evidence, that substantiates the representation.

71.     As the allegations in this Complaint demonstrate, Telebrands is continuing to make false or misleading representations about the origin and benefits of its products.

72.     Telebrands' products and advertising are nothing more than inferior knock offs of martFIVE's HURRYCANE® and Stuffies® product lines and campaigns.

## COUNT I – COPYRIGHT INFRINGEMENT

## PURSUANT TO 17 U.S.C. §§ 101 AND 501, ET SEQ.

73.     martFIVE re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

74.      martFIVE is the owner of the Copyrighted Works and has the exclusive right to reproduce, prepare derivative works, distribute, publicly perform and publicly display the Copyrighted Works in the United States.

75.     Defendants have infringed martFIVE's exclusive copyrights, including the rights of reproduction, distribution, creating derivatives, public performance and/or public display, in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

76.     Defendants' acts have been deliberate, willful, intentional and purposeful, in reckless disregard of and with indifference to martFIVE's rights.

77.     As a direct and proximate result of Defendants' forgoing acts and conduct, martFIVE has sustained and will continue to sustain irreparable injury for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe martFIVE's Copyrighted Works.    Plaintiff is entitled to injunctive relief pursuant to 17 U.S.C. § 502.

## COUNT II - TRADEMARK  INFRINGEMENT

## PURSUANT TO 15 U.S.C. § 1114 AND 15 U.S.C. § 1125(A)

78.     martFIVE re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

79.     martFIVE is   the   owner of   United States Trademark Registrations #4,243,464, #4,286,043, #4,191,792, #4,286,271, #4,286,272.

80.     Defendants have used in commerce in the United States one or more of the same mark(s) or confusingly similar marks, to identify their products, in such a manner as to cause and to result  in  a  likelihood  of  confusion,  as  well  as,  on  information  and belief,   and actual confusion, as to the source, origin, or affiliation of martFIVE's products and/or Defendants' products.

81.     Defendants  are   not   authorized or   licensed by martFIVE to   advertise, market, promote, offer for sale or sell programming under or in connection with martFIVE's marks.

82.     Defendants' conduct is likely to confuse, mislead and deceive members of the public as to the origin of Telebrands' goods or services, or otherwise cause the public

to believe Telebrands is an authorized distributor of martFIVE's products.

83.     Defendants' conduct constitutes infringement in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114, and section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), to the substantial and irreparable injury of the public and of martFIVE's business reputation and goodwill.

84.     Defendants' acts have been deliberate, willful, intentional and purposeful, in reckless disregard of and with indifference to martFIVE's rights.

85.     As a direct and proximate result of Defendants' forgoing acts and conduct, martFIVE has sustained and will continue to sustain irreparable injury for which there is no adequate remedy at law.   Unless enjoined and restrained by this Court, Defendants will continue to infringe martFIVE's trademarks.   Accordingly, this Court should enjoin and restrain Defendants from committing any further such acts.

## COUNT III – COMMON LAW TRADEMARK INFRINGEMENT

86.          martFIVE re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

87.     Defendants' conduct  constitutes infringement of  martFIVE's common law trademark rights to the substantial and irreparable injury of the public and martFIVE's business reputation and goodwill.

88.     Defendants' acts have been deliberate, willful, intentional and purposeful, in reckless disregard of and with indifference to martFIVE's rights.

89.     As a direct and proximate result of Defendants' forgoing acts and conduct, martFIVE has sustained and will continue to sustain irreparable injury for which there is

no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe martFIVE's trademarks.  Accordingly, this Court should enjoin and restrain Defendants from committing any further such acts.

## COUNT IV – TRADE DRESS INFRINGEMENT

90.     martFIVE re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

91.     martFIVE is the owner of common law rights throughout the United States in the HURRYCANE's® and Stuffies'® trade dress through martFIVE's use and promotion in interstate commerce.

92.     The HURRYCANE's® and Stuffies'® trade dress is well known among consumers and has come to be associated exclusively with martFIVE.

93.     The HURRYCANE's® and Stuffies'® trade dress was distinctive long before Defendants began offering its inferior "knock off" version of their products for sale.

94.     The HURRYCANE's® and Stuffies'® trade dress is non-functional.

95.     Defendants' unauthorized use, sale, and distribution of its copies of martFIVE's products is likely to cause confusion, to cause mistake, or to deceive as to the source, affiliation, connection, association, sponsorship, or approval of Defendants' copy of the martFIVE products.

96.     Defendants' unauthorized use, sale, and distribution of Defendants' copy of martFIVE's  products constitute trade dress infringement in violation of Section 43(a) of

the Lanham Act, 15 U.S.C. §1125(a).

97.     Defendants' infringement of martFIVE's trade dress has been and continues to be intentional, willful, and without regard to martFIVE's rights.

98.     Defendants have gained profits by virtue of their infringement of martFIVE's trade dress rights.

99.     martFIVE also has sustained damages as a direct and proximate result of Defendants' infringement of martFIVE's trade dress rights, in an amount to be proven at trial.

100.    Under 15 U.S.C. §1116, martFIVE is entitled to an injunction against Defendants' continuing infringement of martFIVE's trade dress rights.  Unless enjoined and restrained by this Court, Defendants will continue to cause martFIVE great and irreparable injury that cannot fully be compensated or measured in money.  martFIVE has no adequate remedy at law.

101.    Because Defendants' actions have been committed with intent to damage martFIVE and to confuse and deceive the public, martFIVE is entitled to treble its actual damages or Defendants' profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees under 15 U.S.C. §1117(a) and (b).

## COUNT V – UNFAIR COMPETITION AND

## FALSE DESIGNATION  OF ORIGIN  15 U.S.C. §1125(A)

102.    martFIVE re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

103.    The Copyrighted Works which Defendants are falsely reproducing, distributing, publicly performing and/or publicly displaying indicate that Telebrands is authorized to reproduce, distribute, publicly perform and/or publicly display the Copyrighted Works.

104.    Upon information and belief, Defendants have used and are continuing to use forms of false designations of origin and false descriptions which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designation of origin.

105.    Defendants have and continue to misrepresent to members of the consuming public that the Copyrighted Works being reproduced, distributed publicly performed and/or publicly displayed are genuine, non-infringing products.

106.    Defendants' advertising, promotion, marketing, offer for sale and sale of goods and services bearing martFIVE's trademarks and trade dress is likely to confuse, mislead and deceive the public as to the origin, sponsorship or approval of Telebrands' goods and services, or to cause the public to falsely believe that Telebrands is authorized to advertise, market, promote, offer for sale and sell goods and services bearing martFIVE's trademark and Trade Dress.

107.    Defendants' actions constitute unfair competition, false advertising, false designation of origin and/or false or misleading description of fact, in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

108.    Defendants' acts have been deliberate, willful, intentional and purposeful, in reckless disregard of and with indifference to martFIVE's rights.

109.   As a direct and proximate result of Defendants' forgoing acts and conduct, martFIVE has sustained and will continue to sustain irreparable injury for which there is no adequate remedy at law.   Unless enjoined and restrained by this Court, Defendants will continue to infringe martFIVE's copyrights and trademarks.   Accordingly, the Court should enjoin and restrain Defendants from committing any further such acts.

## COUNT VI – MINNESOTA UNFAIR COMPETITION LAW

110.   martFIVE re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

111.   This cause of action arises under Minnesota's law of trademark infringement and unfair competition.

112.   Defendants' activities     complained of     constitute     infringement of martFIVE's common law rights in the State of Minnesota, and unfair competition.

113.   Plaintiff has been damaged by the actions of Defendants in an amount which will be proven at trial.

114.   If the acts of Defendants are allowed to continue, martFIVE will continue to suffer irreparable injury for which it has no adequate remedy at law.

## COUNT VII – MINNESOTA  DECEPTIVE AND
## UNLAWFUL TRADE PRACTICES

115.   martFIVE re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

116.   This cause of action arises under the Minnesota Deceptive Trade Practices

Act, Minn. Stat. §§ 325D.09 et seq. and 325D.43 et seq.

117.    Defendants' activities complained of constitute violations of the Minnesota

Deceptive Trade Practices Act, Minn. Stat. §§ 325D.09 et seq. and 325D.43 et seq.

118.    If the acts of Defendants are allowed to continue, martFIVE will continue

to suffer irreparable injury for which it has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment  as follows:

1.     That judgment be entered for Plaintiff and against Defendants on each of

Plaintiff's claims for relief;

2.     For a temporary restraining order, preliminary and permanent injunction

that Defendants and their agents, servants, employees, attorneys and those acting in

concert or participation with any of them:

  i.  Delete and disable access to Plaintiff's Copyrighted Works,
including but without limitation, by deleting all copies of Plaintiff's
Copyrighted Works from any database, server, or other storage
device owned or controlled by Defendants;

  ii.  Cease and refrain from reproducing, preparing derivative works,
distributing, publicly performing, publicly displaying or otherwise
infringing Plaintiff's Copyrighted Works, including without
limitation, ceasing and refraining from transmitting, copying, and/or
broadcasting Plaintiff's Copyrighted Works;

    iii.    Refrain from using martFIVE's mark or any other confusingly similar mark in connection with the sale, advertisement, marketing or promotion of any goods or service or any other similar infringement of Plaintiff's trademark rights;

    iv.    Refrain from engaging in unfair competition by advertising, promoting, marketing, selling or offering for sale their goods and services or otherwise using martFIVE's mark and/or trade dress in such a way as to mislead, deceive and/or confuse the origin of any of Plaintiff's product;

    v.    Refrain from engaging in any conduct that tends to confuse, mislead or deceive members of the public into believing that the Copyrighted Works reproduced, distributed, publicly performed and/or publicly displayed by Defendants are sponsored, approved or authorized by Plaintiff;

    vi.    to recall and deliver up for destruction all advertising, promotional or marketing materials or other products that infringe Plaintiff's trademark, trade dress or copyrights.

    vii.    to engage in corrective advertising to dispel the confusion caused by Defendants' wrongful acts; and

    viii.    within thirty days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiff's attorneys a written report under oath setting forth in detail

the manner in which Defendants have complied with the foregoing paragraphs.

3.     For maximum statutory damages with respect to each copyrighted work and trademark and trade dress infringement, or for such other amount as may be proper or, alternatively, at Plaintiff's election, full restitution, actual damages suffered as a result of the infringement, an equitable accounting and disgorgement of all revenues and/or profits wrongfully derived by Defendants from their copyright, trademark and trade dress infringement, false designation of origin, false advertising, and unfair competition.

4.     Any and all damages sustained by Plaintiff resulting from Defendants' wrongful and infringing acts.

5.     For Plaintiff's attorney's fees and full costs.

6.     That Plaintiff be awarded enhanced damages against Defendants.

7.     That this case is exceptional pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 504.

8.     That Plaintiff be awarded pre-judgment interest on its judgment.

9.     For such other and further relief as this court deems just and proper.

## JURY DEMAND

Plaintiff, pursuant to Fed. R. Civ. P. 38(b), demands a trial by jury as to all issues so triable.

HELLMUTH & JOHNSON, PLLC

Date: June 4, 2013.                    s/ Russell M. Spence
                                       Russell M. Spence, Jr., ID No. 0241052
                                       8050 West 78th Street
                                       Edina, MN 55439
                                       Email: mspence@hjlawfirm.com
                                       Telephone: (952) 941-4005
                                       Facsimile: (952) 941-2337

                            **ATTORNEYS FOR PLAINTIFF**
                            **martFIVE, LLC**

                            **VERIFICATION**

STATE OF MINNESOTA )
                   )ss
COUNTY OF HENNEPIN )

        J. Brent Longval, being duly sworn, deposes and states as follows:

        1.      I am the Chief Financial Officer for martFIVE, LLC and an agent of
Plaintiff for purposes of executing this document.

        2.      I have read the forgoing Complaint and subscribe on behalf of Plaintiff,
noting that this Complaint has been prepared with the assistance of employees and
counsel and on the advice of counsel, and is based upon information obtained from
Plaintiff.  The factual allegations in this Complaint are true and correct to the best of my
present knowledge, information and belief.

                                       _____
                                       J. Brent Longval

Subscribed and sworn to before me
this 4th day of June          , 2013.

_____
Notary Public

COURTNEY MICHELLE HOEFENER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2016

36